# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA,**

          Plaintiff,

    v.                                      **Case No. 05-CR-97**

**MATTHEW S. HARJU,**

          Defendant.

## RECOMMENDATION TO THE HONORABLE LYNN ADELMAN ON THE DEFENDANT'S MOTION TO SUPPRESS

On April 5, 2005, the grand jury returned a two-count indictment against Matthew S. Harju ("Harju"). The indictment charges Harju with possession of firearms (count one) and possession of ammunition (count two), after being convicted of a crime punishable by imprisonment for a term exceeding one year.

The ammunition and firearms specified in the indictment were seized on January 21, 2005 during a search of Harju's residence, located at W3961 and W3959 State Road 32 in Sheboygan County, Wisconsin ("State Road residences"). On May 12, 2005, Harju filed a motion to suppress the ammunition and firearms specified in the indictment. As grounds, Harju claims that information presented in support of the search warrant did not establish probable cause. Harju's motion has been fully briefed and is now ready for resolution. A jury trial is scheduled to commence before the Honorable Lynn Adelman on July 11, 2005, with a final pretrial conference set for July 1, 2005.

## SEARCH WARRANT APPLICATION

The search warrant challenged by Harju was issued by Sheboygan County Circuit Court Commissioner Rebecca Persick, during the evening hours of January 21, 2005. On that date, Commissioner Persick ("Commissioner Persick") conducted a telephonic search warrant application with Sheboygan County District Attorney Joe DeCecco ("District Attorney DeCecco") and Sheboygan Police Detective Joel Clark ("Detective Clark"). Detective Clark was placed under oath and stated that he had been contacted by a confidential informant, who claimed that Harju possessed a firearm at the State Road residence. According to Clark, the informant's allegation was based exclusively on the observations of an unidentified female relative. The female relative told the informant that Harju waved around a firearm on either December 31, 2005 or January 1, 2005 in the upper unit of the State Road residence.

Detective Clark stated that he decided to investigate the informant's allegations further. He reviewed the Wisconsin Consolidated Court Automation Program ("CCAP") and determined that Harju was convicted of felony escape on July 8, 1996 and was sentenced to twenty-four months in the Wisconsin State Prison System. (Gov. Resp. Exh. B at 2-3.). Believing that it would be illegal for Harju to possess a firearm, Detective Clark arranged a recorded conversation between the informant and the female relative to confirm the informant's allegations. That conversation took place on January 21, 2005, before the telephonic interview with Commissioner Persick. (Gov. Resp. Exh. B at 3-4.). During the conversation with the informant, the female relative repeated the allegations previously conveyed to Detective Clark by the informant. The informant also expressed concern that Harju's firearm was kept in the upper unit of the State Road residence, which was occupied by Harju's nephew, Joshua S. Griffith ("Griffith"). Accordingly, the informant made the request that the female

2

relative ask Griffith to ask Harju to remove the firearm from the upper unit. (Id.). Detective Clark stated that the informant's concern about the location of the firearm was consistent with other information he obtained—in particular, that Detective Clark knew Harju to live at the State Road residence with Griffith (date of birth 1-26-85) and knew that the residence was a duplex. (Gov. Resp. Exh. B at 4-5.).

Later in his oral affidavit, Detective Clark articulated several other details about the residence. He stated that photographs taken by another officer depict the State Road residence as being cream colored with brown trim, as having a first floor porch on the east side, and as having the numbers W3961 and W3959 posted on the north side. (Gov. Resp. Exh. B at 5.). In addition, Detective Clark stated that he had information (1) that Harju pays the rent for the upper unit, as well as the lower unit in which he resides; (2) that both units are connected by a common door; and (3) that both units are frequented by Harju and Griffith. (Gov. Resp. Exh. B at 7.).

## MOTION TO SUPPRESS

Harju argues that the information presented to Commissioner Persick does not establish probable cause. In particular, Harju takes issue with the fact that the date of the informant's initial contact with Detective Clark is undisclosed (Harju Br. at 3.); that the female relative's observation was made approximately twenty days before the search warrant issued (Harju Br. at 5.); that there is insufficient information to establish the informant's credibility or the female relative's credibility (Id.); and that, based on the informant's request, it was likely that the firearm would have been removed from the residence prior to execution of the warrant (Id.).

3

## STANDARD OF REVIEW

In determining whether probable cause for a search warrant exists, an issuing official must consider the "totality of circumstances." United States v. Brack, 188 F.3d 748, 755 (7th Cir.1999)(citing Illinois v. Gates, 462 U.S. 213, 238 (1983)). A search warrant affidavit establishes probable cause when, under the totality of the circumstances, "sets forth sufficient evidence to induce a reasonably prudent person to believe that a search will uncover evidence of a crime." United States v. Peck, 317 F.3d 754, 755-56 (7th Cir.2003)(citing Illinois v. Gates, 462 U.S. 213, 238 (1983)); United States v. Mykytiuk, 402 F.3d 773, 775-76 (7th Cir. 2005).

Where information from an informant is presented to establish probable cause, as in the present case, courts assess the informant's credibility by considering the following factors: (1) whether the informant personally observed the events, (2) the degree of detail shown in the informant's statements, (3) whether the police independently corroborated the information, (4) the interval of time between the events and application for a warrant, and (5) whether the informant appeared in person before the judicial officer who issued the warrant. United States v. Koerth, 312 F.3d 862, 866 (7th Cir.2002); United States v. Johnson, 289 F.3d 1034, 1038-39 (7th Cir. 2002); United States v. Jones, 208 F.3d 603, 609 (7th Cir.2000).

Ultimately, probable cause is a fluid concept. Illinois v. Gates, 462 U.S. 213, 232 (1983). Although probable cause denotes more than a mere suspicion, it does not require certainty. United States v. Ellery, 678 F.2d 674, 677 (7th Cir. 1982); United States v. Cross, 816 F.2d 297, 302 (7th Cir.1987). In addition, the official to whom a warrant application is directed is entitled to draw reasonable inferences about where evidence is likely to be kept, based on nature of evidence and type of offense. United States v. Sleet, 54 F.3d 303 (7th Cir. 1995).

4

ANALYSIS

After considering the totality of the circumstances, it is this court's opinion that the search warrant at issue was based on probable cause, even though only a minimal amount of information was presented to Commissioner Persick. The lack of more specific information and considerations that weigh against probable cause will be discussed first.

**I. Considerations that Weigh Against Probable Cause**

As an initial matter, the source of Clark's knowledge as to the internal structure of the residence and that Harju pays the rent for both units is unclear: Detective Clark simply states that he "received" that information. (Gov. Resp. Exh. B at 6-7.). Similarly, Detective Clark stated that he "determined" that Harju and Griffith occupied the State Road residence and that his information was consistent with the informant's concerns about the location of Harju's firearm. (Gov. Resp. Exh. B at 4-5.).

While the informant or the female relative might have supplied some of the internal details about the State Road residence and told Detective Clark that Harju paid the rent, the court cannot make that assumption based on the transcript of the January 21, 2005 application. This is problematic because, when a building is divided into more than one residential unit, a distinct probable cause determination must be made for each unit. United States v. Butler, 71 F.3d 243, 248 (7th Cir. 1995); see also Maryland v. Garrison, 480 U.S. 79, 85 (1987). The only exceptions to this general rule are when (1) the officer knows there are multiple units and believes there is probable cause to search each unit or (2) the targets of the investigation have access to the entire structure. United States v. Johnson, 26 F.3d 669, 694 (7th Cir. 1994). Without further information as to the basis for Detective Clark's testimony, the court cannot apply the second exception. Thus, probable cause—under the first

5

exception—turns on probable cause to search each unit, which depends upon whether the statements provided by the informant and the female relative are reliable.

Several of the five factors used to evaluate an informant's credibility weigh against such a finding. Neither the informant nor the female relative testified before Commissioner Persick; the court cannot assume that the details known by Detective Clark were derived from either the informant or the female relative; the government has not presented information as to when the informant first spoke with the female relative or law enforcement officials; and approximately three weeks passed from the date Harju allegedly displayed a firearm until the date of the search warrant application.

Moreover, the record contains little personal information about the informant and the female relative. In particular, there is no mention of the relative's or the informant's demeanor, age, or relationship to each other. There is also no mention of how many times Detective Clark conversed with the informant or whether Detective Clark confirmed the identity of the relative or the informant.

### II. Considerations that Favor Probable Cause

All of the above-mentioned circumstances must be weighed against those that favor probable cause. In that regard, several important considerations support an ultimate finding of probable cause under these facts. First, the female relative stated to the informant that she personally observed Harju in possession of a firearm, and police were able to corroborate what they were told by the informant. This was accomplished with the subsequent conversation recorded by law enforcement officials. Here, it is important to note that, as far as the relative was concerned, she was having a conversation with the informant. This adds weight to her credibility because no inference can be drawn that she was making untruthful statements to law enforcement officers simply to make trouble for Harju.

Moreover, the relative's statements are consistent with the fact that photographs of the residence confirm that it is a duplex with upper and lower units.

In this case, the credibility of the relative is more important to the existence of probable cause since she is the source of the informant's information. In other words, the relative can be viewed as a "citizen witness," whose information can form the basis of probable cause. Often, a citizen witness is simply an observer of suspected criminal activity and has no detailed knowledge regarding such conduct. However, with such a witness, lack of details does not render the information untrustworthy, especially if portions can be corroborated. When combining the relative's information with the few corroborative efforts made by Detective Clark and other law enforcement officials, this is sufficient to distinguish the informant and the female relative from sources whose credibility should be judged unfavorably.

Accordingly, given the informant's and the female relative's statements, Commissioner Persick could reasonably infer that the firearm would still be found in the State Road residence on the night that the search warrant was issued. Although approximately twenty days had passed, the items listed in the indictment—firearms, ammunition, and related records—are not as susceptible to frequent transportation or consumption as might be a true where narcotics and other contraband are the focus. In addition, when the search warrant issued, the informant's request to remove the firearm had just recently been made, and there is no indication that the request would reach either Griffith or Harju prior to execution of the warrant, or that it would be acted upon. In fact, the request itself implies that the female relative and the informant believed the firearm to be at its previous location. Moreover, even if Harju complied with the request and removed the firearm from the upper unit, it is reasonable

7

to infer that he might have transferred the firearm to the lower unit, or one of the other locations specified in the search warrant.

For all of the reasons discussed, the court concludes that the January 21, 2005 application established probable cause to support a search warrant for the State Road residence. Suppression is not warranted on these facts. The court will recommend that Harju's motion to suppress be denied.

### GOOD FAITH EXCEPTION

In addition, even assuming that the search was invalid, it does not follow that suppression of evidence is required. A facially valid search warrant issued by a neutral, detached magistrate will be upheld if the police relied on the warrant in good faith. See United States v. Leon, 468 U.S. 897, 913 (1984). An officer's decision to obtain a warrant is prima facie evidence that the officer acted in good faith. United States v. Mykytiuk, 402 F.3d 773, 777 (7th Cir. 2005)(citing United States v. Merritt, 361 F.3d 1005, 1013 (7th Cir.2004)). A defendant can rebut the presumption of good faith only by showing that the issuing official abandoned his role as a neutral and detached arbiter, that the officers were dishonest or reckless in preparing the supporting affidavit, or that the affidavit was so lacking in probable cause that no officer could have relied on it. See Leon, 468 U.S. at 923; United States v. Peck, 317 F.3d 754, 757 (7th Cir.2003).

Harju's analysis ends with probable cause and does not address the good faith exception. Moreover, based on the considerations that resulted in this court's determination of probable cause, there is no indication that Commissioner Persick abandoned her role, that Detective Clark acted dishonestly or recklessly, or that Detective Clark's testimony was obviously lacking in probable cause. Accordingly, the good faith exception to the exclusionary rule constitutes an alternate basis for

denying Harju's motion. See e.g., United States v. Koerth, 312 F.3d 862 (7th Cir. 2002)(applying the good faith exception and denying the defendant's motion to suppress, despite that the search warrant was not based on probable cause).

For all of the reasons discussed herein, the court now enters the following recommendation:

**IT IS THEREFORE RECOMMENDED** that Harju's motion to suppress be **denied.**

Your attention is directed to 28 U.S.C. § 636(b)(1)(B) and (C) and General Local Rule 72.3 (E.D. Wis.), whereby written objections to any recommendation herein or part thereof may be filed within ten days of service of this recommendation. Objections are to be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Courtesy paper copies of any objections shall be sent directly to the chambers of the district judge assigned to the case. Failure to file a timely objection with the district court shall result in a waiver of your right to appeal.

Dated at Milwaukee, Wisconsin, this 15th day of June, 2005.

s/AARON E. GOODSTEIN
United States Magistrate Judge