# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**UNITED STATES OF AMERICA,**
                    **Plaintiff,**

        **v.**                                                    **Case No. 05-CR-97**

**MATTHEW HARJU,**
                    **Defendant.**

---

## DECISION AND ORDER

The government charged defendant Matthew Harju with possessing a firearm and ammunition as a felon in violation of 18 U.S.C. § 922(g). Defendant moved to suppress evidence obtained pursuant to the execution of a search warrant at his residence. A magistrate judge recommended that the motion be denied finding that the warrant was supported by probable cause and, alternatively, that the officers executing the warrant were entitled to rely upon it in good faith. Defendant timely objected, and the matter is now before me for de novo review. See 28 U.S.C. § 636(b)(1).

## I.  FACTS AND BACKGROUND

On January 21, 2005, City of Sheboygan police officer Joel Clark telephoned Sheboygan County Court Commissioner Rebecca Persick in order to obtain a search warrant for defendant's home. (R. 16 Pt. 3, Tele. Sch. Wt. Aff. Tr. at 1.) Clark told the commissioner that a confidential informant ("CI") had informed him that a relative of the CI had observed defendant with a firearm at his residence on New Year's Eve or New Year's Day of 2004/2005. (Id. at 1-2.) Clark did not indicate when the relative provided the information to the CI or when the CI provided it to him. (Id. at 2.)

Clark stated that he had checked CCAP[1] and learned that defendant was born on February 24, 1964, had been convicted of a felony (escape) and thus could not lawfully possess a firearm. (Id. at 2-3.) Clark stated that after receiving this information, he arranged for the CI to make a recorded phone call with the relative, during which he was present, earlier the day of the warrant application. Clark said: "The conversation was basically the CI confirming with the relative about the presence of this gun" and expressing concern that the gun was located near a young family member who lived with defendant. (Id. at 3.) Clark stated that he had "determined" that defendant lived in an upper/lower duplex at W3959-61 State Highway 32, and that defendant's nephew, Joshua S. Griffith, date of birth 1-26-85, also lived there[2] (Id. at 4), but he failed to provide the basis for this information. Clark stated that this information was "consistent with the information received from the CI concerning the CI's concerns about a firearm being present where Mr. Griffith, although the name might have been mentioned, but where Mr. Griffith is residing with [defendant.]" (Id. at 5.)

Clark stated that another officer had photographed defendant's house and the pictures indicated that it was a single building with upper and lower residences and at least one detached garage, had cream colored siding with brown trim, a first floor porch on the east side of the building, and the numbers "W3959" and "W3961" on the north side of the residence, one above the other. (Id. at 5-6.)

---

[1]CCAP stands for "Access to the Public Records of the Consolidated Court Automation Programs."

[2]It appears that Griffith was related to both the CI and defendant.

2

Clark asked "for permission to search both the upper and lower residences, one where we . . . believe [defendant] primarily lives and one where apparently his nephew lives, being in the same residence, for any firearm and ammunition." (Id. at 6.) He also sought permission to search the detached garage and any outbuildings, as well as any persons found on the premises. (Id. at 6.) Clark stated that he had "received information" that defendant paid rent for both units and that "there is a door connecting the two inside and they frequently go in between both apartments." (Id. at 6-7.) He did not indicate the source of the information. Clark also stated that the gun might be in Griffith's unit because "[a]pparently [defendant] was witnessed with it" there, (id. at 7), but he did not disclose the basis for this statement either.

## II. DISCUSSION

### A.    Legal Standard

In ruling on a motion to suppress evidence recovered pursuant to a search warrant, I employ a sequential two-step test. See United States v. Koerth, 312 F.3d 862, 866 (7th Cir. 2002). I first determine whether there is substantial evidence in the record supporting the magistrate's decision to issue the warrant. United States v. Lloyd, 71 F.3d 1256, 1262 (7th Cir. 1995). If I conclude that the evidence was insufficient, I ask whether the officer could "have reasonably believed that the facts set forth in the affidavit were sufficient to support a magistrate's finding of probable cause." Koerth, 312 F.3d at 866 (citing United States v. Leon, 468 U.S. 897, 920-24 (1984)).

3

## 1.    Probable Cause Standard

Probable cause to issue a warrant exists when the warrant application alleges facts sufficient to induce a reasonably prudent person to believe that a search will uncover evidence of a crime.  United States v. Peck, 317 F.3d 754, 756 (7th Cir. 2003).  The Supreme Court has explained that:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

Illinois v. Gates, 462 U.S. 213, 238 (1983).  Though the application need not state each and every detail of the suspected crime, mere conclusory statements are insufficient.  See United States v. Reddrick, 90 F.3d 1276, 1280 (7th Cir. 1996).  The application must provide evidence sufficient  to enable the magistrate to exercise independent judgment rather than simply ratifying the conclusions of others.  Gates, 462 U.S. at 239.  I consider the application in a realistic and common sense manner and determine whether it alleges specific facts and circumstances that would permit the issuing magistrate to reasonably conclude that the evidence sought to be seized was associated with the crime alleged and located in the place indicated.  Koerth, 312 F.3d at 866-67 (citing United States v. Spry, 190 F.3d 829, 835 (7th Cir. 1999)).  I give a magistrate's determination of probable cause considerable weight and resolve doubtful cases in favor of upholding the warrant.  United States v. Quintanilla, 218 F.3d 674, 677 (7th Cir. 2000).

When a request for a warrant is supported by an informant's tip, I consider (1) the amount of detail provided; (2) the degree to which the informant acquired his knowledge through firsthand observation; (3) the interval between the date the informant observed the

4

events and the date the officer applied for the warrant; (4) the extent to which the police corroborated the informant's statements; and (5) whether the informant personally appeared before or presented an affidavit to the magistrate, thus allowing the magistrate to evaluate his knowledge, demeanor and sincerity. See Koerth, 312 F.3d at 866. No single factor is dispositive, and a deficiency in one may be compensated for by a strong showing in another or by some other indication of reliability. E.g., Peck, 317 F.3d at 756; United States v. Johnson, 289 F.3d 1034, 1039 (7th Cir. 2002); United States v. Brack, 188 F.3d 748, 756 (7th Cir. 1999).

### 2. Good Faith Exception

In Leon, the Supreme Court held that excluding evidence obtained in good-faith reliance on the probable cause determination of a neutral and detached magistrate does not serve the exclusionary rule's purpose of deterring police misconduct. See 468 U.S. at 916-22. Therefore, even if I find a warrant invalid, the government may nevertheless defeat a motion to suppress by demonstrating by a preponderance of the evidence that the police relied in "good faith" on the magistrate's decision to issue the warrant. Koerth, 312 F.3d at 868. An officer's decision to seek a warrant is prima facie evidence that he acted in good faith. Peck, 317 F.3d at 757; Koerth, 312 F.3d at 868. To rebut this presumption, the defendant may show that (1) the magistrate issued the warrant in reliance on a deliberately or recklessly false warrant application; (2) the magistrate wholly abandoned her neutral, detached judicial role and simply rubber-stamped the warrant application; or (3) the warrant was based on an application so lacking in indicia of probable cause that no reasonable officer could have relied on it. See Leon, 468 U.S. at 923; Peck, 317 F.3d at 757; Koerth, 312 F.3d at 868.

5

A reviewing court evaluates an officer's good faith reliance in a manner similar to that used to determine qualified immunity. <u>Koerth</u>, 312 F.3d at 869.

> That is to say, [the court] will admit the evidence unless: (1) courts have clearly held that a materially similar [application] previously failed to establish probable cause under facts that were indistinguishable from those presented in the case at hand; or (2) the [application] is so plainly deficient that any reasonably well-trained officer would have known that his [application] failed to establish probable cause and that he should not have applied for the warrant.

<u>Id.</u>

**B.    Analysis**

**1.    Probable Cause**

For two reasons, I find that the warrant in the present case was not supported by probable cause. First, the information provided by the CI's relative and the CI was both insufficiently detailed with respect to the alleged offense, and it was stale. Second, Clark failed to establish the reliability of either the relative or the CI, or to corroborate the relative's allegation that defendant possessed a weapon.

**a.    Inadequate Information**

**i.    Lack of Detail**

Clark told the commissioner that a CI had told him that a relative had told the CI that defendant possessed a firearm in his house on New Year's Eve or New Year's Day. Clark did not say when the relative had conveyed this information to the CI or when the CI had conveyed it to him. Clark also said that the relative had repeated the allegation in a phone conversation with the CI. Clark did not describe the firearm to the commissioner or indicate that the relative had described it to him. Clark also did not indicate to the commissioner

6

the circumstances under which the relative had observed the firearm. Again, it appears that the relative did not describe such circumstances to Clark. Clark did not state where in the house the defendant was when the relative allegedly observed him with a gun, nor did he indicate that he had information that defendant kept the gun in his house or where he might have kept it. At one point, Clark stated that defendant was "apparently" witnessed with the gun in Griffith's unit, but Clark did not specify the source of this information.[3]

The Seventh Circuit has disapproved warrants based on far more detailed information than Clark provided. For example, in Koerth, the officer stated that a known informant had told him that he saw "approximately 150-200 pounds of marijuana at the [defendant's] residence, as well as approximately two pounds of methamphetamine, a large bag of cocaine, and $30,000 in U.S. currency." 312 F.3d at 867. The informant also said that he had previously purchased drugs from the defendant and that the defendant was a member of a motorcycle gang and dangerous. The court held that the "affidavit presented the magistrate judge with little more than mere conclusions and assertions of wrongdoing on the part of the defendant, without an adequate factual foundation." Id. at

---

[3]The magistrate judge stated in his recommendation that the CI was concerned that the gun was kept in Griffith's unit, the upper. The transcript states that "the CI was concerned that the gun that Mr. Harju was waving around was being kept at [gender pronoun deleted] other relative's apartment in the same house and did not want that gun there and asked it be removed." (Tr. at 4, alteration in original.) The transcript does not specify who lived in the upper or the lower unit, or that the gun was, in fact, kept in Griffith's or any particular unit, only that the CI (who so far as the record shows was never in the house) was concerned about its location. I am also a bit confused by the assertions of concern about the "younger relative." Although guns can be dangerous no matter the age of those around them, Griffith was not a child. According to Clark he was twenty years old at the time.

7

867.  In the present case, the source of the information, the relative, was unknown, and

s/he provided no details about the contraband defendant allegedly possessed.

In Peck, the court found inadequate an informant's statement that she had seen

drugs in the home of her ex-boyfriend.  317 F.3d at 755.  The court stated:

> Although Doe [the informant] claimed she personally observed drugs in Peck's house less than two days before the search warrant was executed and she appeared before the issuing judge, these elements are not enough to overcome the minimal amount of detail given in Doe's affidavit.  Doe failed to give specific details about the drugs in Peck's house such as where the drugs were hidden, the total amount of drugs Peck possessed, or the frequency with which Peck sold drugs.  The only details Doe gave were that she had been in the house and was shown drugs. Cf. United States v. Lloyd, 71 F.3d 1256, 1259 (7th Cir. 1995) (CI not only gave specific details about the building in which defendant resided, but also specified the precise location of the guns in that building).  Furthermore, even though Doe stated that she was Peck's girlfriend, she was unable to give any information regarding Peck other than that he was a black male.  Cf. [United States v.] Jones, 208 F.3d [603, 605-06 7th Cir. 2000)] (CI provided specific details about defendant which the police were able to corroborate).

Id. at 756.  In the present case, Clark did not describe the firearm or identify its type, did

not indicate how the relative came to see it, or where in the house it might be found.  Thus,

under Seventh Circuit precedent, the application was plainly insufficient.

### ii.    Stale Information

In addition to the application's lack of detail, the information it contained was three

weeks old.  "While there is no bright line rule for staleness, the facts in an affidavit

supporting a search warrant must be sufficiently close in time to the issuance of the

warrant and the subsequent search conducted so that probable cause can be said to exist

as of the time of the search and not simply as of some time in the past."  United States v.

Wagner, 989 F.2d 69, 75 (2d Cir. 1993); see also Peck, 317 F.3d at 756 (stating that "the

interval of time between the events and application for a warrant" is an important factor).

8

Observations of past criminal activity that by themselves are stale can be sufficient if the affidavit also establishes a pattern of continuing criminal activity such that there is reason to believe that the observed activity was probably not a one-time occurrence. Wagner, 989 F.2d at 75; see also United States v. Pless, 982 F.2d 1118, 1126 (7th Cir. 1992) (stating that the passage of time is less critical when the affidavit refers to ongoing criminal activity). However, in the present case, Clark provided no information suggesting on-going criminal activity. He never stated that defendant owned the gun or that defendant stored it in his residence. Nor did Clark indicate that in his experience individuals with guns generally keep them at their residences. Cf. United States v. Barnard, 299 F.3d 90, 95 (1st Cir. 2002) (finding probable cause where officer averred, based on his eleven years experience, that individuals with guns generally keep them at their residences). Further, Clark indicated that the gun had only been observed on one occasion. Based on the information presented to the commissioner, it is just as likely that defendant possessed the gun only on New Year's Eve than it was that he owned it and kept it at home. Cf. Owens v. United States, 387 F.3d 607, 608 (7th Cir. 2004) (finding no probable cause based on affidavit stating that three months earlier an informant had bought a unknown quantity of crack from defendant at a house believed defendant's because it would be as likely that defendant or someone with access to defendant's house had made a single, isolated sale).[4]

---

[4]During the January 21, 2005 recorded phone call, the CI asked the relative to see if the gun could be removed from the house. The magistrate judge found that this supported the notion that the gun was still there. However, the CI, who was never in the house, had no way of knowing if it was still there.

Case 2:05-cr-00097-LA   Filed 08/22/05   Page 9 of 23   Document 30

The government cites cases where information older than that relied upon in the present case was found not to be stale.  However, those cases are distinguishable.  In United States v. Batchelder, 824 F.2d 563 (7th Cir. 1987), in which the court upheld a warrant based on nine month old information, the government searched the premises of a company that manufactured parts used to make illegal silencers and found information on individuals who had ordered illegal parts.  Agents obtained warrants to search the individuals' homes and seized more than 163 silencers and 187 machine guns.  Id. at 564.  The court upheld the search of the defendant's home because most of the searches based on the company's records had turned up contraband despite the age of the information, the records showed that the parts had been shipped to defendant's home, and the ATF agent who applied for the warrant swore that, in his experience, individuals purchasing parts for silencers tended to keep them in their homes.  Id. at 564-65.  In the present case, Clark did not show that the information was reliable despite its age or state that individuals in defendant's position tended to keep their guns in their homes.

In Pless, the applicant presented three informants' statements that the defendant was manufacturing methamphetamine.  The court stated that although one of the informants had provided information that was about three months old, other information was only two days old and referred to an ongoing manufacturing operation.  The court noted: "All in all, the age of the information received by the officers was not critically deficient, especially in the context of a laboratory that is likely to be an elaborate and semi-permanent fixture."  982 F.2d at 1126.  In the present case, the only observation of weapon possession was three weeks old, there was no evidence of ongoing criminal activity, and a gun is not an elaborate or semi-permanent fixture.

10

Thus, Clark provided only a bare allegation that three weeks previous an unidentified person had observed defendant with a gun. An officer may compensate for weak or stale information by demonstrating the reliability of the informant or by independently corroborating the informant's statements. See Peck, 317 F.3d at 756; United States v. Weaver, 99 F.3d 1372, 1379 (6th Cir. 1996). However, in the present case, Clark did neither.

### b. No Demonstration of Reliability or Corroboration

#### i. Reliability

Ordinarily, when police rely on a CI, the warrant application includes the officer's attestation as to the CI's credibility. See, e.g., United States v. Johnson, 26 F.3d 669, 689-90 (7th Cir. 1994). Even then, courts generally require the officer to provide details demonstrating past reliability. See, e.g., Reddrick, 90 F.3d at 1280. In the present case, Clark said nothing about the reliability of the CI or the relative. See Koerth, 312 F.3d at 867 (finding no probable cause where warrant was "based on the testimony of a previously unknown informant"). Clark did not identify the CI to the commissioner and apparently did not even know the relative. Thus, he could provide no information about the relative's knowledge of firearms. The commissioner, therefore, had no way of assessing the reliability of the CI or the relative, or of determining whether the relative could accurately identify a firearm. Cf. Peck, 317 F.3d at 756-57 (finding no probable cause where application failed to explain how informant knew that the substance in question was an illicit drug).

11

Further, neither the CI nor the relative made statements against penal interest, which might have enhanced their reliability. Cf. United States v. Leidner, 99 F.3d 1423, 1429-30 (7th Cir. 1996) (collecting cases). Neither did the relative know that the CI would convey her statement to the police, which might have made her less likely to fabricate. See Koerth, 312 F.3d at 871 (stating that "a magistrate . . . is entitled to give greater weight to a tip from a known informant, who can be held responsible should he be found to have given misleading information to police officers, and thus has an incentive to provide truthful information to the detectives"); see also United States v. Christmas, 222 F.3d 141, 144 (4th Cir. 2000) ("Unlike the anonymous tipster, a witness who directly approaches a police officer can also be held accountable for false statements.").[5]

Finally, the commissioner could not personally assess the credibility of the CI or the relative because neither appeared before her. Nor did they submit sworn affidavits, which might have enhanced their credibility. Reddrick, 90 F.3d at 1281.

In sum, the commissioner had no basis for determining that either the CI or the relative were credible.

### ii.    Corroboration

To corroborate the relative's allegation, the officers checked defendant's record on CCAP, somehow determined that he paid rent on both units in the duplex and that a common door connected the units, and photographed defendant's house. However,

---

[5]The magistrate judge had it backward when he opined that the relative's reliability was enhanced because s/he did not know that the police were listening to her conversation with the CI. As the Koerth court noted, an informant is more likely to be truthful if she knows that the police could come after her if she lies.

12

individually or in combination, these efforts were insufficient.[6]  First, "the police must do more than simply run a record check of the accused, because this alone does not corroborate a CI's statements alleging that a search will uncover evidence of a crime." Peck, 317 F.3d at 757.

Second, merely verifying innocent details about a suspect does not corroborate an informant's statement.  See, e.g., Weaver, 99 F.3d at 1379 ("The discovery of the utilities account holder, by itself, is insignificant."); United States v. Mendonsa, 989 F.2d 366, 369 (9th Cir. 1993) ("Mere confirmation of innocent static details is insufficient to support an anonymous tip.  The fact that a suspect lives at a particular location or drives a particular car does not provide any indication of criminal activity."); United States v. Gibson, 928 F.2d 250, 253 (8th Cir. 1991) (finding no probable cause where "only several innocent details had been corroborated by the police in driving by the address given and by making a few telephone calls.").  In the present case, the deficient corroboration was compounded because Clark did not disclose to the commissioner the basis for his assertions that defendant paid rent on both units, that a common door connected the units and that "they frequently go in between both apartments."  (Tr. at 7.)  Further, Clark did not appear to know which unit defendant lived in or where in the house the gun might be found.[7]  At one point, Clark stated: "Apparently [defendant] was witnessed with it in Joshua's."  (Tr. at 7.) However, he did not indicate the basis for this statement or suggest why it might mean that

_____

[6]The magistrate judge stated that officers corroborated the CI by having the relative confirm her allegation that defendant had a weapon in the recorded phone call.  However, this was not corroboration, which involves obtaining independent verification, but repetition.

[7]See n. 3, supra.

13

the gun was stored there. Nevertheless, Clark applied for and the commissioner granted a warrant to search the entire building. As the Seventh Circuit has held:

> [P]robable cause to search one apartment in a multi-unit building does not support a warrant authorizing a search of the entire building. Rather, when a building is divided into more than one residential unit, a distinct probable cause determination must be made for each unit. A warrant authorizing the search of an entire multi-unit building is fatally defective when the warrant authorizes the search of an entire structure and the officers do not know which unit contains the evidence of illegal conduct. The only exceptions to this general rule are when (1) the officer knows there are multiple units and believes there is probable cause to search each unit, or (2) the targets of the investigation have access to the entire structure.

Jacobs v. City of Chicago, 215 F.3d 758, 767 (7th Cir. 2000) (internal citations and quotation marks omitted). The application in the present case was insufficient to take advantage of either exception.[8] Cf. United States v. Butler, 71 F.3d 243, 249 (7th Cir. 1995) (allowing search of entire building where suspect exercised dominion or control over the entire building or had access to the entire structure).

Third, neither the CI nor the relative described the house nor accompanied the officer who photographed it. They merely supplied Clark with an address. Cf. Jones, 208 F.3d at 606 (noting that CI accompanied officer to suspect's house and identified it); Lloyd, 71 F.3d at 1259 (noting that CI pointed suspect's apartment out to officer, and officer confirmed CI's description of the residence). Thus, the application provides no assurance that the officers focused on the house in which the relative allegedly saw the gun.

---

[8]Clark also asked to search all occupants of the building. Such "all persons" warrants are judicially disfavored, see, e.g., Owens v. Lott, 372 F.3d 267, 274 (4th Cir. 2004) (collecting cases), cert. denied, 125 S. Ct. 876 (2005); United States v. Guadarrama, 128 F. Supp. 2d 1202, 1207 (E.D. Wis. 2001) (collecting cases), and are proper only when there is good reason to believe that anyone found on the targeted premises is likely to be a participant in criminal activity, Owens, 372 F.3d at 276. In the present case, Clark presented no reason to believe that anyone other than defendant possessed the gun.

14

Fourth, neither the CI nor the relative described defendant, identified him from a photograph, or provided other identifying details about him. Thus, the application does not ensure that the officers focused on the person the relative allegedly saw with the gun. Cf. Jones, 208 F.3d at 605-06 (noting that the CI provided specific details about defendant which the police were able to corroborate); United States v. Henry, 933 F.2d 553, 556 (7th Cir. 1991) (noting that the informant picked the defendant out of a photo spread).

### c.      Conclusion as to Probable Cause

Considered as a whole, Clark's application included insufficient facts to induce a reasonable person to believe that the police would find a firearm at W3959 & W3961 State Highway 32. The government cites Henry and Lloyd for the proposition that an informant's statement about a felon's possession of firearms in his residence – so long as there is some corroboration – provides probable cause for the issuance of a warrant. Though the proposition of law is correct, these cases are easily distinguishable on their facts.

In Lloyd, the CI, a fellow gang member of the defendant's, had first hand knowledge that the defendant possessed handguns within the previous twenty-four hours and provided officers with a detailed description of the building and of the location of defendant's apartment and the weapons in question. Also, the officer independently verified the CI's description of the building. 71 F.3d at 1263. Further, the CI appeared before the issuing judge, and the judge found him credible and the information reliable. Id. In contrast, in the present case, the relative provided no specifics, did not appear before the commissioner and was not shown to be reliable. See Peck, 317 F.3d at 756 (distinguishing Lloyd because the CI there provided details about where defendant lived and the location of the guns in the building).

15

In Henry, the court found a warrant application sufficient, but there, the informant had been in the defendant's apartment at least ten times and had described the firearm in question. Further, the police had corroborated his information by running the defendant's record, confirming his residence through telephone records and a personal visit to his apartment, and having the informant pick defendant's picture out of a photo spread. Id. at 555. Nothing similar occurred in the present case.

Rather, the present case resembles United States v. Wilhelm, 80 F.3d 116 (4th Cir. 1996), cited with approval in Owens v. United States, 387 F.3d 607, 608 (7th Cir. 2004), and United States v. Bryant, 951 F. Supp. 674 (E.D. Mich. 1997). In Wilhelm, the magistrate issued a warrant based on an officer's statement that "a concerned citizen" had told him that within the previous forty-eight hours he had seen marijuana being sold in Wilhelm's home. The citizen provided directions to Wilhelm's home, which the officer confirmed. 80 F.3d at 117-18. The court found the application insufficient because it contained vague information from an unnamed informant whose reliability had not been verified (other than the officer's stating that he was a "mature person with personal connections with the suspects," who "projected a truthfull [sic] demeanor."). Id. at 120. The court stated:

> We conclude that this affidavit fell far short of providing probable cause for a search warrant. Upholding this warrant would ratify police use of an unknown, unproven informant – with little or no corroboration – to justify searching someone's home. The right to privacy in one's home is a most important interest protected by the Fourth Amendment and a continuing theme in constitutional jurisprudence.
>
> The minimal corroboration provided in this case simply was insufficient. The conclusion that an informant is reliable and mature based only on brief telephone conversations is dubious, and the affidavit does not disclose any basis for [the officer's] conclusion that her tipster was a "concerned citizen."

16

> Moreover, the only corroboration [the officer] provided was that the informant's directions to Wilhelm's home were correct. Almost anyone can give directions to a particular house without knowing anything of substance about what goes on inside that house, and anyone who occasionally watches the evening news can make generalizations about what marijuana looks like and how it is packaged and sold.

Id. at 120-21 (internal citations omitted). In the present case, Clark's application contained only a vague allegation from an unknown person made during a brief recorded phone call, and the officer corroborated only the location and general appearance of defendant's house.

In Bryant, an ATF agent, Packard, applied for a warrant to search the defendant's house based a CI's statement that s/he had seen the defendant "in possession of a .380 caliber handgun and a 9mm handgun at his home" within the past twenty-four hours. 951 F. Supp. at 675. Packard stated that on at least five previous occasions the CI had provided truthful information to the ATF, which had led to the seizure of firearms and narcotics. Id. at 676. Packard further stated that the defendant had been convicted of a felony, and that he had conducted surveillance of the residence and saw defendant entering and leaving. Id. The court found this information insufficient, stating:

> First, the facts provided with regard to possession are extremely bare. The only detail provided pertains to the types of firearms that were allegedly seen in Defendant's possession. [T]his degree of detail must be viewed as wanting. [T]his Court must find that the statement that the affiant in this case had observed Defendant "in possession of a .380 caliber handgun and a 9mm handgun at his home" is lacking in relevant detail.
>
> Furthermore, there is no suggestion in the affidavit that Packard or any other agent attempted to conduct surveillance intended to corroborate the fact of Defendant's possession of firearms. Rather, the affiant corroborated the informant's tip only as to Defendant's address and criminal record. However, the law is clear that merely verifying public information such as addresses . . . and criminal records is not sufficient to corroborate an informant's statement.

17

> Given the lack of relevant detail and meaningful corroboration, the question thus becomes whether the affidavit will stand on the single fact that it states that the informant has on at least five . . . occasions provided information to the Detroit Police and ATF, that in all instances the information provided by this source was investigated and found to be true, and that the information that was provided by this source led to the seizure of firearms and narcotics. [T]his Court cannot find, under totality of the present circumstances, that such a statement provides a substantial basis for a finding of probable cause.

Id. at 678-79 (internal quote marks and citations omitted). In the present case, the relative provided even less detail, her observation was three weeks (as opposed to twenty-four hours) old, police corroborated only defendant's felony record and address, and the officer did not even aver that the relative or the CI were reliable, much less provide information concerning prior uses of either's information.

Therefore, under all of the circumstances, I conclude that the commissioner did not have probable cause to issue the warrant.

### 2. Good Faith

Defendant does not allege that Clark lied to or misled the issuing commissioner, or that the commissioner abandoned her neutral and detached judicial role. However, I conclude that Clark could not have reasonably relied on the warrant because (1) courts have declined to apply Leon on similar facts; (2) in cases that pre-date the present warrant, the Seventh Circuit has held that applications containing more facts than Clark's did not support probable cause; and (3) the application was plainly deficient.

### a. Courts Have Declined to Apply Leon in Similar Cases

In Wilhelm, the court held that Leon did not apply "due to the 'bare bones' nature of the affidavit." 80 F.3d at 121 (citing United States v. Laury, 985 F.2d 1293, 1311 n.23

18

(5th Cir. 1993) (defining "bare bones affidavit" as one that contains "wholly conclusory statements, which lack the facts and circumstances from which a magistrate can independently determine probable cause"). The court found that the officer, who used the phrases "concerned citizen," "mature person" and "truthful demeanor" to describe someone with whom she had only limited telephone conversations and no face-to-face contact, were insufficient to demonstrate reliability. The court further noted that the officer "fail[ed] to provide any meaningful corroboration." Id. The court found that the officer's check of motor vehicles records and use of the Police Information Network to determine Wilhelm's prior drug activity were irrelevant. Id. at 120-21; see also United States v. Leake, 998 F.2d 1359, 1367 (6th Cir. 1993) (declining to apply Leon where application was based on anonymous tip that the defendant possessed marijuana in his home and only corroboration officer obtained was brief surveillance that turned up nothing unusual).

In Bryant, the court declined to apply Leon when the informant's statements regarding the defendant's possession of a firearm were bare, the police did not conduct any surveillance to corroborate the informant's accusation, and the evidence of the informant's reliability was too conclusory to make up for the affidavit's other shortcomings. 951 F. Supp. at 679.

Like Wilhelm and Bryant, the present warrant was based on a brief, vague allegation of possession of contraband, the officer was unable to vouch for the informant's reliability, and the officer obtained no meaningful corroboration. Therefore, Leon does not apply.

### b. Seventh Circuit Cases

As noted, the Seventh Circuit analyzes good faith much like it does qualified immunity. See Koerth, 312 F.3d at 869. Thus, if the court has previously found a certain

19

quantum of information insufficient, officers in the future may not reasonably rely on similar or lesser information in securing and executing a warrant. This is so because the court has "clearly established" that this type of information will not suffice.

In three recent cases, the Seventh Circuit has disapproved warrant applications and thereby established a minimum threshold for good faith reliance.

First, in <u>Owens</u>, the court found deficient an affidavit stating that an informant of unknown reliability had three months earlier bought "a quantity of crack" from the defendant at a house believed to be the defendant's. 387 F.3d at 608. Based on the paucity of detail, the court found no basis for thinking either that the premises were a crack house or that the money received in the sale would still be on the premises. <u>Id.</u> The court further concluded that the affidavit was so inadequate that the search could not be saved by <u>Leon</u>. <u>Id.</u> In the present case, the application suffered the same infirmities: the information was conclusory and stale, and the application provided little basis for believing that the gun would still be there.

Second, in <u>Peck</u>, the Seventh Circuit found that an application containing substantially more information than Clark's did not establish probable cause. As discussed above, in <u>Peck</u> the police relied on an informant who stated that two days previous she had seen drugs in the home of her ex-boyfriend. Because she was previously unknown, the officer had her swear to her statements before the magistrate. 317 F.3d at 755. The court found the warrant application insufficient because (1) the informant failed to give specific details about the drugs; (2) she was unable to give any information regarding the defendant other than that he was a black male; (3) the affidavit further failed to explain why the informant knew that the substance in question was an illicit drug; and (4) the only effort

20

made by police to corroborate the informant's statements was to check the defendant's record.  Finally, even though the informant appeared before the judge issuing the warrant, she did not offer any testimony.  "Thus, based on the totality of the circumstances, there was not sufficient evidence to support the issuance of the search warrant."  Id. at 756-67.

In the present case, as in Peck:  (1) the relative provided no details about the gun; (2) neither the relative nor the CI provided information about defendant much beyond his name and address; (3) the application provided no basis for believing the relative could identify a firearm; and (4) the police corroborated only innocent details.

Third, in Koerth, the officer based his affidavit on a known informant's statement that he saw specific amounts of controlled substance and currency at the defendant's residence.  312 F.3d at 867.  The informant further stated that he had purchased drugs from the defendant in the past and provided other information about the defendant's background.  The court held that the

> affidavit presented the magistrate judge with little more than mere conclusions and assertions of wrongdoing on the part of the defendant, without an adequate factual foundation, based on the testimony of a previously unknown informant. We therefore . . . are convinced that the affidavit failed to sufficiently support the search warrant . . . .

Id. at 867.  In the present case, the relative offered much less detail than the informant in Koerth, she was not identified, and there was no basis for assessing her reliability.[9]

---

[9]In Peck and Koerth the court upheld the searches based on the good faith exception.  However, because the information contained in the instant warrant application was much more deficient, it would be inappropriate to apply the good faith exception in the present case.

Finally, in Reddrick, the officer relied on a confidential informant's statement that he observed approximately thirteen kilos of cocaine in the defendant's residence. 90 F.3d at 1279. The court held:

> Here the evidence of reliability of the informant's information was sparse. While Officer Ash's testimony does report a firsthand observation of the drugs by the confidential informant, the informant apparently provided little detail regarding the drugs allegedly present in the house except for their quantity (which, in the event, turned out to be thirteen times too high). There was, of course, no corroboration of the informant's information, nor did the informant testify at the probable cause hearing. Magistrate Foster correctly noted that "to the extent that Officer Ash states that the informant provided reliable information in the past, it is an unsupported conclusion which does not demonstrate probable cause," R. 24 at 13.

Id. at 1280. The court noted that the informant did not describe defendant's residence, indicate the location of the drugs or personally testify. Id. at 1280-81. The court upheld the search only because the informant had also made three controlled buys from the defendant. Id. at 1281. In the present case, the relative provided less specific information, the officer provided no information supporting the relative's reliability, and the police conducted no controlled operation to back up the relative's allegation.

Because the Seventh Circuit held in these materially similar cases that applications based on even more information failed to suffice, I cannot apply Leon in the present case.

### c. The Application Was Plainly Deficient

Even if the above cases could be distinguished, Clark's affidavit was so plainly deficient that no reasonably well-trained officer would have relied upon it. The officer relied on the over-heard comment of an unidentified relative that three weeks previously she had seen defendant with a firearm of some sort somewhere in his house. The officer never identified, much less confirmed the reliability of, this relative. Nor did the officer

22

corroborate any aspect of the relative's statement.  Therefore, a reasonable officer would not have relied upon the warrant.

### III.  CONCLUSION

**THEREFORE, IT IS ORDERED** that defendant's motion to suppress (Docket # 12) is **GRANTED**.

Dated at Milwaukee, Wisconsin this 21st day of August, 2005.

/s Lynn Adelman

_____
LYNN ADELMAN
District Judge

23